# (November 10, 1976)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RONALD DALEY, Appellant.—Appeal from a judgment of the Montgomery County Court, rendered July 10, 1975, upon a verdict convicting defendant of criminally negligent homicide and leaving the scene of an accident. At approximately 2:40 on the afternoon of September 17, 1974 Pat Sanford and Jean Quist were walking along an elevated portion of Route 30 in the City of Amsterdam. The two-lane road runs north and south, with traffic permitted only one way, northbound. There is a walkway on both sides, about two feet wide, separated from the highway proper by a curb. Jean Quist testified that she was going south (i.e., facing vehicular traffic) close to the curb on the west side of the highway with Pat Sanford to her right walking on the path. She saw a solitary automobile approaching in the eastern lane, which inexplicably switched into the western lane and bore down on them. She tried to avoid it by running to her right, off the western shoulder, but was struck. Pat Sanford, who ran for the center of the road, was hit and killed. The automobile did not stop. Defendant contends that there was insufficient evidence to support the verdict convicting him of criminally negligent homicide, that his written confession was coerced, and that evidence of polygraph test results was improperly put before the jury.

## I

If it was proper to consider his confession, there was sufficient proof from which a jury could conclude that defendant, with criminal negligence, caused Pat Sanford's death. The owner of the automobile which struck the decedent testified he had lent it to Daley on the day of the accident. A witness who claimed to have been in the car when the accident occurred, Keith Pickering, although he had refused to implicate Daley before the Grand Jury, testified at trial that Daley was driving when the automobile swerved into the girls. Pickering also told the petit jury that "when he hit the girls, his head went down, like this (indicating), like he was trying to get ahold of himself". This suggestion of impaired sensibility is explained in defendant's confession: "I smoked a lot of marijuana. Maybe three or four joints I used. I guess my mind must have been blurred from the pot * * * Sometime in the afternoon I was driving * * * and somewhere on the

overpass there were two girls walking and I hit those two girls with the car. It was an accident. I tried to swerve away but they ran out in front of me." At trial the defendant denied being in the automobile, either as driver or passenger, when it struck the girls. He renounced the confession as coerced. Given the absence of defense proof explaining why the car swerved, the jury could properly find that the marijuana had caused the accident by impairing Daley's ability to drive and that it was criminally negligent (Penal Law, §§ 125.10, 15.05, subd 4) for Daley to drive so impaired. It is therefore necessary to consider the voluntariness of the confession.

## II

At the suppression hearing the investigating officers testified that defendant received the warnings required by *Miranda v Arizona* (384 US 436) and that the confession was freely given. No evidence was offered by the defense, making the Judge's finding of admissibility inevitable. At trial, however, the defendant took the stand to contradict the police. Certain details of the interrogation are undisputed. Defendant worked from 11 o'clock on the evening of October 8, 1974 to 7 o'clock the next morning. He returned home to sleep, but was awakened by police at 10:00 A.M. They took* him to the Fonda State Police Station where he was interrogated by three or four officers from 11:30 A.M. until midafternoon, whereupon he requested a polygraph test. The police agreed, and at 5:00 P.M. they left Fonda by troop car for the Loudonville station where the test was to be held. They arrived at 6:30. The test was run from 8:30 to 10:00 P.M., after which the defendant was told the test indicated he had lied in denying he was the driver of the automobile. He was also shown two written statements signed by his friend Keith Pickering identifying him (Daley) as the driver. At approximately midnight he signed the written confession, which, in addition to the inculpatory statement quoted above, contained a statement acknowledging and waiving his *Miranda* rights. The principal differences between the police and defendant's version of the interrogation are defendant's allegations that he was never told his *Miranda* rights at the Fonda station, that he asked for but was denied a lawyer, and that he was slapped and verbally intimidated by the investigating officers. State Police Investigator Brant testified that the defendant expressly waived his rights after having been orally apprised of them upon entering the Fonda station. Brant, who was present during virtually all of the interrogation, also denied seeing the defendant slapped or hearing him demand a lawyer. This is unlike the situation in *People v Valerius* (31 NY2d 51), where the interrogating police officer did not testify, leaving the defendant's allegations of brutality uncontradicted. Rather, the case at bar is similar to *People v Caruso* (45 AD2d 804) where this court suggested that the confession was motivated not by coercion but by defendant being confronted with the incriminating statement of a codefendant. Here, defendant Daley was not only shown Pickering's statement naming him as the driver, but was also faced with having failed the polygraph test. Moreover, defendant admitted signing the written confession containing an enumeration and waiver of his *Miranda* rights. The jury could reasonably have concluded that Daley intelligently waived them.

---

* Neither below nor on this appeal does defendant contend that he was seized in violation of the Fourth Amendment. Therefore, the question of whether the confession was the fruit of an unconstitutional seizure presented in, e.g., *Brown v Illinois* (422 US 590) and *People v Martinez* (37 NY2d 662) is not before this court.

## III

The defendant, in the course of describing the interrogation which led to his confession, testified that he had volunteered to take a "lie-detector" or polygraph test. He failed to state the result, thereby creating an inference that he had passed. On cross-examination the prosecutor attempted to dispel the favorable inference (cf. *People v Buchanan*, 145 NY 1, 23–25; see, also, *Feblot v New York Times Co.*, 32 NY2d 486, 497–498; *People v Regina*, 19 NY2d 65, 78), by inquiring whether defendant had been told by the polygraph examiner that he had failed the test. The defendant denied being so informed. In this posture of the trial the appealable issue arose of whether the prosecutor was bound by the defendant's answer, because of the acknowledged inadmissibility of polygraph results as evidence *(People v Leone*, 25 NY2d 511), and thereby rendered powerless to rebut the favorable inference still before the jury, or if he could legitimately proceed to rebut the inference by the introduction of evidence to the contrary. In *People v McCain* (42 AD2d 866) the Second Department, in dealing with a factual situation remarkably similar to that herein, held that the People had a limited right to rebut the favorable inference created by defendant's testimony that he had voluntarily submitted to a polygraph test. However, since the expert was not permitted to give evidence as to the test result, we need not herein determine if the People's right of rebuttal should include the opinion evidence of the expert that the defendant had failed the test. Since, in the absence of such testimony, we are constrained to resolve the issue wholly upon the evidence elicited from a trooper who testified that the expert had told him that the defendant failed, our only concern is whether such hearsay testimony caused prejudice to the defendant of reversible dimension. The record reveals that defense counsel objected to the trooper's testimony on general rather than specific grounds. He failed to articulate an objection premised on hearsay. Had he objected on specific grounds and had the court ruled against him, the issue would have been preserved for appeal. Not having done so, the evidentiary rule is that " 'all grounds of objection which might have been obviated, if they had been specifically stated, must be deemed [on appeal] to have been waived' " (Richardson, Evidence [10th ed], § 538). Further, the court instructed the jury in its charge not to consider the test result in arriving at their verdict. Judgment affirmed. Sweeney, J. P., Kane, Mahoney, Larkin and Herlihy, JJ., concur.